1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRIME TIME SALES, LLC, | ) Case No.: 1:20-cv-0229 - DAD  JLT |
| Plaintiff, | ) |
| | ) FINDINGS AND RECOMMENDATIONS |
| | ) GRANTING PLAINTIFF'S MOTION FOR |
| v. | ) DEFAULT JUDGMENT |
| | ) |
| GLOBAL FRESH PRODUCE, LLC, et al., | ) (Doc. 10) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Prime Time Sales, LLC asserts that it sold and shipped perishable commodities to Global Fresh Produce, which failed to pay for the food.  Plaintiff seeks to hold Global Fresh Produce, Jose Sanchez, and Mario Bedoya liable for violations of the Perishable Agricultural Commodity Act, breach of contract, breach of the fiduciary duty, unjust enrichment, and conversion.  (*See generally* Doc. 1)  Because Defendants failed to respond to the allegations in the complaint, Plaintiff now seeks default judgment against the defendants.  (Doc. 10)

The Court finds the matter suitable for decision without oral argument.  Therefore, the motion is taken under submission pursuant to Local Rule 230(g) and General Order 618 and the hearing date of July 10, 2020 is **VACATED**.  For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED** in the total amount of $**19,228.18**

///

///

1

## I.       Procedural History

Plaintiff initiated this action by filing a complaint on February 13, 2020.  (Doc. 1)  Plaintiff asserts Prime Time Sales sold and shipped perishable agricultural commodities to Global Fresh Produce during May 2019.  (*Id.* at 3, ¶ 10)  Plaintiff reports that it "has performed all conditions, covenants and obligations required to be performed by it under the agreements for sale of produce," yet Defendants failed to pay for the produce.  (*Id.* at 4, ¶ 13)

Although Defendants were properly served with the summons and complaint, they failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure.  Upon application of Plaintiff, default was entered against the Defendants on April 9, 2020.  (Docs. 7, 8)  Plaintiff filed the motion for default judgment now pending before the Court on May 22, 2020.  (Docs. 25, 26)  Defendants have neither appeared nor opposed the motion.

## II.       Legal Standards Governing Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment.  After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b).  Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven.  *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).  In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment.  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default judgment is disfavored.  *Id.* at 1472.

### III.   Plaintiff's Factual Allegations and Evidence

The Court accepts Plaintiff's factual assertions as true because default has been entered against Defendant.  *See Pope*, 323 U.S. at 22.  With the motion now pending, Plaintiff has also presented evidence, including in declaratory form and exhibits, which support the allegations in the complaint.

Plaintiff alleges that Global Fresh Produce possessed a valid PACA license and "was engaged in the handling of produce in interstate and/or foreign commerce as a commission merchant, dealer and/or retailer in wholesale and jobbing quantities and was therefore subject to the provisions of the PACA."  (Doc. 1 at 3, ¶¶ 8-9)  Plaintiff asserts Prime Time Sales "sold and shipped perishable agricultural commodities"—including corn, green peppers, yellow peppers and jalapeno chilies—to Global Fresh Produce between May 16 and May 31, 2019.  (*Id.*, ¶ 10; *see also* Doc. 10-2 at 4, 10, 12) According to Plaintiff, Global Fresh Produce "agreed to pay Plaintiff in the principal amounts at least as great as the sum of $11,782.50."  (Doc. 1 at 3, ¶10)   In addition, Plaintiff asserts the commodities "were purchased and sold in or in contemplation of the course of interstate and/or foreign commerce."  (*Id*. at 4, ¶ 17)

With the transactions, Prime Time Sales gave Global Fresh Produce "invoices for said transactions setting forth in detail the amounts owed… for Defendant's purchase of the commodities, cumulatively totaling the principal amount of at least $11,782.50."  (Doc. 1 at 3-4, ¶ 11) On the invoice, Prime Time Sales provided the following written notice of the company's intent to preserve its PACA trust rights:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

(*Id.* at 5, ¶ 21; *see also* Doc. 10-2 at 10, 12)  The invoices also indicate that if payment is past due, there was a "finance charge[] at the rate of 1½ per month on any unpaid amount," which totaled an 18% annual percentage rate.  (*Id.* at 6, ¶ 23; Doc. 10-2 at 10, 12)  Further, the invoices informed Defendant

3

that Plaintiff may recover collection charges, including attorney's fees.  (*Id.* at 5; Doc. 10-2 at 10, 12)  Plaintiff alleges that the company "repeatedly demanded that Defendant Global pay the amounts due and owing under the invoices." (Doc. 1 at 4, ¶12)  However, Defendant "failed and refused… to pay Plaintiff for the produce purchased and no part of those sums due and owing has been paid." (*Id.*)

## IV.    Discussion and Analysis

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

### A.    Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment.  *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages.  *Id.*; *see also Microsoft Corp. v. Nop*, 549 F. Supp.2d 1233, 1236-37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if default judgment is denied because plaintiff will be without other recourse for recovery").  Because Plaintiff has no other means to recover damages from Defendants, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

### B.    Merits of Plaintiff's claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's claims and the sufficiency of the complaint together.  *See Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1098 (N.D. Cal. 2014) ("For ease of analysis, the merits of Plaintiffs substantive claims and sufficiency of the complaint are considered together"); *see also Premier Pool Mgmt. Corp. v. Lusk*, 2012 WL 15932060, at *5 (E.D. Cal. May 4, 2012).  The Ninth Circuit has suggested that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover."  *Pepsico, Inc.*, 238 F. Supp. 2d at 1175. In the motion for default judgment, Plaintiff requests damages related to the PACA violations.  (Doc. 10-3 at 5-6, 9) Thus, the Court addresses the merits of only these claims.

#### 1.    PACA violations

The Perishable Agricultural Commodity Act (PACA) was enacted to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce" and

"provides a code of fair play … and aid to [agricultural] traders in enforcing their contracts." 7 C.F.R. Part 46, Fed. Reg. 45735, 45737 (Nov. 20, 1984).

Under PACA, it is unlawful for any commission merchant, dealer, or broker to "fail or refuse truly and correctly to account and make full payment in respect of any transaction in any [perishable commodity] to the person with whom such transaction is had... or to fail to maintain the trust as required." 7 U.S.C. § 499b(4).  A trustee much hold any commodities and receivables, or proceeds from the sale of the commodities, in trust for the benefit of all unpaid suppliers or sellers until full payment of the amount owed has been received. 7 U.S.C. § 499e(c).

To establish a claim under PACA, a plaintiff must demonstrate:

> (1) the commodities sold were perishable agricultural commodities, (2) the purchaser was a commission merchant, dealer, or broker, (3) the transaction occurred in contemplation of interstate or foreign commerce, (4) the seller has not received full payment on the transaction, and (5) the seller preserved its trust rights by including statutory language referencing the trust on its invoices.

*Beachside Produce, LLC v. Flemming Enters*., LLC, 2007 US. Dist. LEXIS 44074 at *6 (N.D. Cal. June 6, 2007), citing 7 U.S.C. § 499e(c)(3)-(4); 7 C.F.R. § 46.46(c), (f). In addition, "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997).

### 2. Analysis

Plaintiff's business involves selling wholesale quantities of agricultural commodities in interstate commerce. (*See* Doc. 1 at 2-3)  Plaintiff held PACA license number 20020361, and reports Global Fresh Produce has PACA license number 220150678.  (Doc. 1 at 4, ¶¶ 16-18; Doc. 10-2 at 3, Dorchuck Decl. ¶ 7)  Plaintiff sold corn, green peppers, yellow peppers and jalapeno chilies to Global Fresh Produce in the amount of $11,782.50, which was in anticipation of interstate and/or foreign commerce.  (*See id.*, ¶¶ 14, 17; *see also* Doc. 10-2 at 4, 10, 12)  Prime Time Sales, as the seller, "preserved its statutory trust rights under PACA by providing … written notice of Plaintiff's intent to preserve Plaintiff's PACA trust rights on the face of each invoice."  (Doc. 1 at 5, ¶ 21)  However, Global Fresh Produce has not paid Prime Time Sales for the corn, peppers, and chilies.

Plaintiff alleged facts supporting the creation of a trust and a breach of that trust under 7 U.S.C.

§ 499b(4) by Global Fresh Produce. Plaintiff has also alleged that defendants Jose Sanchez and Mario Bedoya were each "an officer, director, member, shareholder and/or owner of Global" (Doc. 1 at 2, ¶¶ 4-5).  Thus, Jose Sanchez and Mario Bedoya were in positions in which they could control the assets of Global Fresh Produce, but the company failed to preserve trust assets for Plaintiff.  Because Jose Sanchez and Mario Bedoya breached the fiduciary duty, they may be held personally liable for the tortuous act. *Sunkist*, 104 F.3d at 283; *see also Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701 (2nd Cir. 2007).  Consequently, the Court finds Plaintiff has sufficiently stated a claim under PACA against Global Fresh Produce, Jose Sanchez, and Mario Bedoya

### C.      Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *Pepsico, Inc.*, 238 F.Supp.2d at 1176.  Here, Plaintiff seeks judgment in the total amount of $19,228.18, including fees, costs, and finance charges.  (Doc. 10-3 at 9)  This amount represents the total sum owed after the sales to Global Fresh Produce from Plaintiff.  Global Fresh Produce did not comply with its obligations under PACA, and Jose Sanchez and Mario Bedoya violated their fiduciary duties. Thus, the amount of damages is proportional to Defendants' conduct, and this factor does not weigh against default judgment.

### D.      Possibility of dispute concerning material facts

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts factual allegations in Plaintiffs' Complaint as true and (2) though properly served, Defendants failed to appear and defend.  *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists").  Therefore, this factor does not weigh against default judgment.

### E.      Whether default was due to excusable neglect

Generally, the Court will consider whether a defendant's actions— such as failure to file an answer— is due to excusable neglect.  *See Eitel*, 782 F.2d at 1472.  Here, Defendants were served with the summons and complaint on February 20, 2020. (Docs. 4-6)  Thus, it is unlikely the failure to

respond was the result of excusable neglect.  *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default").  Accordingly, this factor does not weigh against default judgment.

### F.    Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because the defendants' failure to appear makes a decision on the merits impractical.

## V.    Relief Requested

Based upon the foregoing, Plaintiff established that the defendants violated PACA, and the *Eitel* factors weigh in favor of granting default judgment. Therefore, the Court turns to the relief requested related to this claim and the evidence presented by Plaintiff related to the damages.  *See Pope*, 323 U.S. at 22 (allegations regarding the amount of damages must be proven); *see also DR JKL Ltd. v. HPC IT Educ. Ctr.,* 749 F. Supp. 2d 1038, 1051 (N.D. Cal. 2010) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages").

### A.    Damages under PACA

Under PACA, a "commission merchant, dealer, or broker... shall be liable to the person or persons injured … for the full amount of damages" after a violation.  7 U.S.C. §499e(a).  Plaintiff seeks $11,782.50 for the unpaid invoices.  (Doc. 10-2 at 9-13; Doc. 10-3 at 9)  Based upon the evidence presented, which includes the invoices, the Court finds Defendants are liable for the violations of PACA, and recommends Plaintiff's motion for damages be **GRANTED** in the amount of $11,782.50.

### B.    Attorneys' Fees, Interest, and Costs

Plaintiff alleges Prime Time Sales contracted with Global Fresh Produce to recover attorney fees by indicating on the invoices that Prime Time Sales may recover collection charges, including attorney's fees. (Doc. 1 at 5; Doc. 10-2 at 10, 12)  In addition, the invoices stated if payment was past due, there was a "finance charge[] at the rate of 1½ per month on any unpaid amount," which totaled an 18% annual percentage rate.  (*Id.* at 6, ¶ 23; Doc. 10-2 at 10, 12)  According to Plaintiff, these terms

1    "were bargained-for terms of the contract and are sums owing in connection with the sales transactions

2    that are the subject of this complaint."  (*Id.* at 6, ¶ 24)  Thus, Plaintiff requests fees in the amount of

3    $4,477.00; interest (calculated through July 7, 2020) totaling $2,324.68; and reimbursement of costs

4    totaling $644.00.  (*See* Doc. 10-3 at 9)

5                    1.      Fees

6              Though attorneys' fees are not specifically provided for under PACA, it does not preclude an

7    award of fees.  *J.C. Produce v. Paragon Steakhouse Restaurants*, 70 F.Supp.2d 1119, 1123 (E.D. Cal.

8    1999). The Ninth Circuit determined a PACA beneficiary may also recover expenses and fees that are

9    due contractually or otherwise "in connection with" the transaction, or series of transactions, causing

10   the Plaintiff to bring a PACA trust claim.  *Middle Mountain Land & Produce. v. Sound Commodities*,

11   307 F.3d 1220, 1223-24 (9th Cir. 2002).  The Court declined to determine whether an invoice created

12   a contractual right to attorneys' fees in a PACA case, but rather remanded that issue to the district

13   court. *Id.* at 1225.  However, in other contexts, the Ninth Circuit determined that terms expressed in an

14   invoice for the sale of goods impose contractual duties. *See United States ex rel. Hawaiian Rock*

15   *Prods. Corp. v. A.E. Lopez Enters.*, 74 F.3d 972, 976 (9th Cir. Guam 1996).

16             Notably, courts have determined invoices may create a contractual obligation to pay attorneys'

17   fees after considering the language on the invoices issued according to state law. *Coosemans*

18   *Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2nd Cir. 2007).  In *Southwest Concrete Products v.*

19   *Gosh Construction Corp.*, 51 Cal. 3d 701, 709 (Cal. 1990), the California Supreme Court determined

20   that late charges, in the form of interest, become "part of the contract under section 2207 of the

21   California Uniform Commercial Code."  This statute provides that terms added in an invoice, for

22   example, "become part of the contract unless: (a) The offer expressly limits acceptance to the terms of

23   the offer; (b) They materially alter it; or (c) Notification of objection to them has already been given or

24   is given within a reasonable time after notice of them is received." Cal. U. Com. Code § 2207(2).

25   Because the Court finds neither the interest nor attorneys fees terms materially alter the contract for

26   the PACA goods, it appears that the *Coosemans* rationale supports the request for fees here.

27             Moreover, courts in the Ninth Circuit imposed contractual obligations as to terms first

28   expressed in invoices preserving a PACA trust. *Underwood & Wong v. Enriquez*, 2010 WL 2889745

                                                         8

at *2 (E.D. Cal. July 21, 2010) ("Pursuant to the express language of the contracts, the prevailing party is entitled to an award of attorneys [sic] fees"); *C. H. Robinson Co. v. Marina Produce Co.*, 2007 WL 39311 at *4 (N.D. Cal. Jan. 4, 2007) ("Contractual claims for attorney's fees and interest are within the scope of a PACA trust claim").  Because Plaintiff's invoices indicated Prime Time Sales was entitled to "collection charges including attorney fees" (Doc. 10-2 at 10, 12) if the invoices were delinquent, the Court recommends that Plaintiff's request for fees be **GRANTED**.

### 2.     Pre and post-judgment interest

Where supported by a contractual right, prejudgment interest may be included in a PACA trust claim. *Middle Mountain*, 307 F.3d at 1225. The Court has discretion to award reasonable prejudgment interest to a PACA claimant when there is not a contract between the parties, if such award is necessary to promote the interest of the claimant. *Id.* at 1225-26.

Plaintiff argues the pre-judgment interest should be awarded as it was "based on the terms of the written agreement between the parties." (Doc. 10-3 at 7-8)  Invoices showing the sales indicate past due accounts will accrue 1.5% finance charge per month, with an "18% annual percentage rate."  (Doc. 10-2 at 10, 12)  For the reasons set forth above as to Plaintiff's request for fees, and because pre-judgment interest is owed in connection with the underlying transactions, the Court recommends the Plaintiff's request for pre-judgment interest be **GRANTED**.  Likewise, Plaintiff is entitled to post-judgment interest as the payments remain past due and the interest rate was incorporated in the invoices. Therefore, the Court recommends Plaintiff's request for post-judgment be **GRANTED**.

### 3.     Costs

In addition to damages and interest, Plaintiff seeks reimbursement of court costs in the amount of $644.00. (Doc. 25 at 2)  This amount is supported by the record, as the Court's docket reflects payment of the $400 filing fee, Plaintiff reports service of process fees in the amount of $244.40. (Doc 10-1 at 5, Botta Decl. ¶13).  Therefore, the Court recommends that Plaintiff's request for an award of the costs incurred in filing this PACA matter be **GRANTED**.

## VII.     Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  *See Aldabe*, 616 F.2d at 1092.  Based upon the

foregoing, the Court **RECOMMENDS**:

    1.      Plaintiff's motion for default judgment be **GRANTED** in amount of $**19,228.18**; and

    2.      The finance charge at the rate of 18% per annum be applied on all unpaid principal sums due, until fully paid.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days of the date of service of these Findings and Recommendations, Plaintiffs may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

    Dated:   __July 1, 2020__             __/s/ Jennifer L. Thurston__
                                          UNITED STATES MAGISTRATE JUDGE